**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-CIV-80788-RAR**

**NYA YANITZA MONTANEZ**,
as Personal Representative of the
**Estate of Yanely Gonzalez**, **deceased**,

    Plaintiff,
v.

**LIBERTY MUTUAL FIRE INSURANCE
COMPANY,**

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant Liberty Mutual Fire Insurance Company's ("Defendant" or "Liberty Mutual") Motion for Summary Judgment, filed April 24, 2019 [ECF No. 35]. At issue is whether Liberty Mutual acted in bad faith when it failed to immediately tender its insured's full per-person policy limit to settle a wrongful death case arising from a car accident that resulted in the death of a child and injury to four passengers. Having considered the parties' written submissions, the record, and applicable case law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [ECF No. 35] is **GRANTED** as set forth herein.

## BACKGROUND

The genesis of this litigation occurred on January 30, 2010, when Jason Brown rear-ended Nya Yanitza Montanez ("Ms. Montanez") and her two minor children, Yanely Gonzalez and Eduardo Gonazlez, Jr. *See* Defendant's Statement of Material Facts ("Def. SOMF") [ECF No. 34 at ¶ 2]; Plaintiff's Statement of Material Facts ("Pl. SOMF") [ECF No. 46 at ¶ 2]. Because of the tragic impact, three-month-old, Yanely Gonzalez, was killed; eight-year-old, Eduardo Gonzalez,

Jr., was ejected from the vehicle, suffering head trauma; and Ms. Montanez was injured. *Id.* After hitting the Gonzalez family, Jason Brown's vehicle spun into another car occupied by Jose Ramos (thirty-eight-years-old) and Maria Carmona (two-years-old), both of whom were also injured. *Id.*

On February 1, 2010, Douglas Brown ("Mr. Brown"), Jason Brown's father, contacted Liberty Mutual to report that his son had been involved in an accident in West Palm Beach and that a child had been killed. Def. SOMF at ¶ 3; Pl. SOMF at ¶ 3. Jason Brown was driving his father's vehicle at the time of the accident, and Mr. Brown had a Liberty Mutual automobile insurance policy, which provided liability limits of $250,000 per person and $500,000 per accident. Def. SOMF at ¶¶ 1, 2; Pl. SOMF at ¶¶ 1, 2. Upon learning of the accident, Liberty Mutual assigned claims adjuster, Colleen Edwards ("Ms. Edwards"), to the case and sent the insureds "other insurance" affidavits and excess exposure letters. Def. SOMF at ¶ 4; Pl. SOMF at ¶ 4. Ms. Edwards also requested a police report and ran an internet search, which revealed that in addition to the child fatality, the accident had left four others injured and in need of attention at the hospital. Def. SOMF at ¶ 5; Pl. SOMF at ¶ 5.

On February 2, 2010, Ms. Edwards obtained an "events report" from the Palm Beach County Sheriff and contacted Mr. Brown to advise him that it would be in his best interest to retain counsel. Def. SOMF at ¶¶ 6-8; Pl. SOMF at ¶¶ 6-8. Ms. Edwards also called the Liberty Mutual sales department and determined that Jason Brown was not listed on the policy as an additional driver, which presented a potential coverage issue, requiring an investigation. Def. SOMF at ¶ 9; Pl. SOMF at ¶ 9. As such, Ms. Edwards sent the insureds reservation of rights letters. *Id.*

On February 5, 2010, Ms. Edwards spoke to Progressive Insurance, the Personal Injury Protection ("PIP") carrier for Ms. Montanez, and learned, for the first time, that Plaintiff had retained Toral, Garcia & Franz as counsel. Def. SOMF at ¶ 10; Pl. SOMF at ¶ 10. That same day,

Ms. Edwards called Mr. Toral's office, but she was advised that she would need to call back later. Def. SOMF at ¶ 11; Pl. SOMF at ¶ 11. On February 9, 2010, Ms. Edwards called Plaintiff's attorney's office for a second time and left a message, requesting a callback, but did not receive one. Def. SOMF at ¶ 13; Pl. SOMF at ¶ 13. On February 23, 2010, Ms. Edwards called Plaintiff's attorney for a third time, but she could not reach Plaintiff's counsel. Def. SOMF at ¶ 18; Pl. SOMF at ¶ 18. Ms. Edwards left a message requesting that Plaintiff's counsel call her back to discuss the claim and noting that Liberty had not yet received a letter of representation. *Id.*

On March 2, 2010, Ms. Edwards called Plaintiff's counsel for a fourth time to give counsel a status update on the claim; Ms. Edwards's call was transferred to a voicemail and she left a message requesting a call back. Def. SOMF at ¶ 19; Pl. SOMF at ¶ 19. The following day, on March 3, 2010, Ms. Edwards called Plaintiff's counsel for a fifth time and left "an important message," requesting a call back, but did not receive a call. Def. SOMF at ¶ 23; Pl. SOMF at ¶ 23. During the scope of its investigation, Liberty Mutual also communicated with Plaintiff's PIP Adjuster on multiple occasions. Def. SOMF at ¶¶ 10, 25, 32; Pl. SOMF at ¶¶ 10, 25, 32.

On March 4, 2010, Liberty Mutual sent a letter to counsel for all claimants, stating that Defendant was making its full $250,000 per person and $500,000 per accident policy limits available to settle the claims arising from the accident. *See* Letter Dated March 4, 2010 [ECF No. 34-13]. In addition, Liberty Mutual noted that it would be arranging a settlement conference to assist all claimants in reaching an apportioned settlement.[1] *Id.* On that same day, Lewis Jack, Esq., called Ms. Edwards and stated that he and Mr. Toral represented Plaintiff. Def. SOMF at ¶ 29; Pl. SOMF at ¶ 29. When Ms. Edwards attempted to give Plaintiff's counsel the contact

---

[1] The settlement conference was subsequently scheduled for April 8, 2010. *See* Letter Dated March 17, 2010 [ECF No. 34-14]. The parties dispute whether Liberty Mutual cleared the April 8, 2010 date with Plaintiff's counsel prior to scheduling the conference. For purposes of summary judgment, the Court accepts Plaintiff's contention that the April 8, 2010 date was not approved by Plaintiff's counsel.

information for Defense counsel, Mr. Jack stated that he would not be needing it. *Id.* This was the first communication to Liberty Mutual from anyone on behalf of Plaintiff. Def. SOMF at ¶ 30; Pl. SOMF at ¶ 30.

On March 31, 2010, Plaintiff's counsel rejected the opportunity to settle Plaintiff's wrongful death claim on grounds that Defendant should have immediately tendered the $250,000 policy limit, rather than attempt to settle all claims at a settlement conference. *See* Letter Dated March 31, 2010 [ECF No. 34-15]. The letter also requested that Liberty Mutual tender $125,000 for Ms. Montanez's claims and $125,000 for Eduardo Gonzalez Jr.'s claims. *Id.* On April 6, 2010, counsel for Liberty Mutual sent Plaintiff's counsel a letter, noting that Defendant had issued checks to resolve the claims of Ms. Montanez and her son in accordance with Plaintiff's March 31, 2010 letter. *See* Letter Dated April 6, 2010 [ECF No. 34-16]. In addition, the letter noted that because Liberty Mutual was settling Ms. Montanez and Eduardo Gonazlez Jr.'s claims, it was able to offer the remaining available policy limit of $250,000 to settle and resolve the claim of the Estate of Yanely Gonzalez. *Id.* To that end, on April 8, 2010, Liberty Mutual delivered the two $125,000 checks to settle Ms. Montanez and her son's claims.[2] Def. SOMF at ¶ 37; Pl. SOMF at ¶ 37. Similarly, on April 13, 2010, Liberty Mutual attempted to deliver a check in the amount of $250,000 to Plaintiff's counsel to settle the wrongful death claim, but Plaintiff's counsel refused to accept it. Def. SOMF at ¶ 38; Pl. SOMF at ¶ 38.

On April 14, 2010, attorney Lewis Jack filed a lawsuit against the Browns on behalf of Ms. Montanez and Eduardo Gonzalez (as parents and Personal Representatives of the Estate of Yanely Gonzalez and as parents of Eduardo Gonzalez, Jr.), Ms. Montanez individually, and Eduardo Gonzalez, individually, asserting a wrongful death claim, two personal injury claims, and a loss of

---

[2] Although the settlement of these claims was not effectuated on April 8, 2010, the claims were ultimately settled over a year later. *See* Affidavit of Paul Colandreo [ECF No. 34-11 at ¶ 17].

consortium claim. Def. SOMF at ¶ 39; Pl. SOMF at ¶ 39. All claims were eventually dismissed except for the wrongful death claim against Jason Brown, which resulted in a consent judgment in the amount of $8,250,000. *Id*.

On June 15, 2018, Plaintiff Nya Yanitza Montanez, as Personal Representative of the Estate of Yanely Gonzalez, filed the instant lawsuit, alleging one count of common law bad faith [ECF No. 1]; Plaintiff amended her Complaint on August 14, 2019 [ECF No. 12]. Plaintiff seeks damages including, but not limited to, the final judgment against Jason Brown of $8,250,000. On April 24, 2019, Defendant filed the instant Motion for Summary Judgment [ECF No. 35].

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (alterations and internal quotation

marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party has shouldered its initial burden, the burden shifts to the non-moving party to "'set forth specific facts showing that there is a genuine issue for trial,' not just to 'rest upon the mere allegations or denials of the adverse party's pleading.'"  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quoting *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992)).

Plaintiff's First Amended Complaint asserts a single cause of action for common law bad faith [ECF No. 12].  The Court, sitting in diversity jurisdiction, applies the substantive law of the forum state, Florida.  *See Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015).  Florida law requires an insurance company to negotiate and settle claims against an insured in good faith.  *See Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1, at *3 (Fla. 2018).  In determining whether an insurer has acted in good faith, the totality of the circumstances are considered.  *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004).

The critical inquiry in evaluating a bad faith claim is "whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment."  *Harvey*, 259 So.3d 1, at *7.  An insurer is required to advise the insured of settlement opportunities, the probable outcome of litigation, the possibility of excess judgment, and any steps the insured may take to avoid excess judgment.  *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (internal citation omitted).  An insurer must also "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."  *Boston Old Colony*, 386 So. 2d at 785.  "Where liability is clear, and injuries so serious that a judgment in excess of policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."  *Powell v. Prudential Property & Casualty*

*Ins.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). A delay in settlement negotiations which is willful and without reasonable cause may result in a bad faith inference. *Id.*

Although the issue of bad faith liability is ordinarily a question reserved for the jury, Florida appellate courts have resolved bad faith claims on the pleadings where, as a matter of law, the undisputed facts preclude a reasonably jury from concluding that an insurer acted in bad faith. *See Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. 5th DCA 1988); *Caldwell v. Allstate Ins. Co.*, 453 So. 2d 1187, 1190 (Fla. 1st DCA 1984); *RLI Ins. Co. v. Scottsdale Ins. Co.*, 691 So. 2d 1095, 1096 (Fla. 4th DCA 1997); *see also Berges*, 896 So. 2d at 680 (noting the Florida Supreme Court and Florida district courts have, in certain circumstances, affirmed the granting of summary judgment on the issue of bad faith). Consistent with Florida's courts, the Eleventh Circuit has also held that summary judgment is appropriate where, as a matter of law, an insurance company cannot be found liable for bad faith. *See Daniels v. GEICO Gen. Ins. Co.*, 740 F. App'x 665, 671 (11th Cir. 2018); *Mesa*, 799 F.3d at 1360; *Valle v. State Farm Mut. Auto. Ins. Co.*, 394 F. App'x 555, 557 (11th Cir. 2010); *Johnson v. Geico Gen. Ins. Co.*, 318 F. App'x 847, 851 (11th Cir. 2009).

## **ANALYSIS**

Liberty Mutual contends that no reasonable juror could find Defendant acted in bad faith in handling Plaintiff's wrongful death claim. Plaintiff counters that Liberty Mutual's decision to pursue a global settlement conference, rather than immediately tender the $250,000 per person liability limits to settle Plaintiff's wrongful death claim, constitutes bad faith under Florida law. Specifically, Plaintiff advances that Liberty Mutual had an obligation to settle the most egregious claim—the wrongful death claim—before apportioning the remainder of the policy. Plaintiff's cabined conception of Florida's bad faith jurisprudence, however, is not supported by the case law in this State, or this District.

Under Florida law, "an insurer—acting with diligence and due regard for its insured—is allowed a reasonable time to investigate a claim[.]" *Johnson*, 318 F. App'x at 851. As such, an insurer need not immediately tender its policy limits, nor accept a settlement offer without time for investigation. *Id.* In this case, approximately one month elapsed between February 1, 2010 (when Liberty Mutual first learned of the accident) and March 4, 2010 (when Defendant offered all claimants its full policy limits). In that time span, Liberty Mutual investigated a potential coverage issue, obtained a police report and "events report" from the Palm Beach County Sheriff, contacted Plaintiff's PIP adjuster, sent the insureds "other insurance" affidavits and excess exposure letters, and advised Mr. Brown to retain an attorney.

In addition, Defendant's claims adjuster, Ms. Edwards, called Plaintiff's counsel <u>five</u> separate times, left multiple messages, and requested several call backs, but never received the same. Notwithstanding its inability to communicate with Plaintiff's counsel, on March 4, 2010, just thirty-two days after having learned of the accident, Liberty Mutual sent Plaintiff's counsel a letter stating that it would be tendering its full policy limits and advising that a global settlement conference would be arranged to apportion the same.

In response, Plaintiff's counsel waited almost one month, until March 31, 2010, to reject Liberty Mutual's offer to settle Plaintiff's wrongful death claim. This one-month time frame, coupled with the first month of Liberty Mutual's investigation, forms the basis of Plaintiff's claim for unreasonable delay. While Plaintiff argues that Liberty Mutual "delayed settling this known catastrophic claim for 66 days," Pl.'s Opp'n [ECF No. 45] at 11, Plaintiff ignores the fact that her counsel did not return Defendant's calls for an entire month and subsequently sat on Defendant's settlement offer for a month before rejecting it in favor of a bad faith claim. As the First Circuit stated in *Peckham v. Continental Casualty Insurance Co.,* 895 F.2d 830 (1st Cir. 1990):

> [T]he justification for bad faith jurisprudence is as a shield for insureds—not as a sword for claimants. Courts should not permit bad faith in the insurance milieu to become a game of cat-and-mouse between claimants and insurer, letting claimants induce damages that they then seek to recover, whilst relegating the insured to the sidelines as if only a mildly curious spectator.

*Id.* at 835. Here, even under the most favorable construction of the facts, the Court cannot ignore Plaintiff's counsel's hand in manufacturing the delay Plaintiff now complains about. The Court will not tolerate the use of bad faith claims as a sword for claimants in insurance litigation.

More importantly, the evidence in this case demonstrates that no reasonable jury could find Defendant did not act with the "same degree of care and diligence as a person of ordinary care and prudence" would exercise in the management of their own affairs. *Harvey*, 259 So.2d at *10. After learning of the accident, Defendant diligently investigated a potential coverage issue, sought out police and events reports, contacted and advised its insured, and offered, within thirty-two days, to settle all claims by tendering its fully policy limits in compliance with *Powell*. Defendant did so in the absence of a specific demand from Plaintiff and without any indication that might suggest urgency in the resolution of Plaintiff's claim. *See Valle*, 394 F. App'x at 557 (noting that although Florida law does not require a formal settlement demand in a bad faith action, such a demand would indicate to defendant that its efforts at obtaining a global settlement might increase the insured's exposure to liability). Indeed, Defendant's diligence was undeterred by Plaintiff's counsel's repeated refusal to communicate with Defendant during the investigative process. In sum, the facts, when viewed in the light most favorable to Plaintiff, support the contention that, at most, Liberty Mutual delayed in offering to settle Plaintiff's wrongful death claim by thirty-two days while it conducted an investigation. Such delay is not unreasonable. *See Clauss*, 523 So. at 1178 (stating that a "one-month period to verify [a] claim was not excessive, and certainly does not rise to the level of bad faith").

Further, it defies common sense to argue—as Plaintiff does—that Liberty Mutual was required to settle Plaintiff's wrongful death claim, as the most severe claim, before engaging in a global settlement conference with the remaining claimants. "There is no duty under Florida law for an insurer in a multiple competing claimant situation to immediately tender a full split limit to the most injured victim, even where the insurer knows, and the other claimants agree, which victim is the 'most injured.'" *Houston v. Progressive Am. Ins. Co.*, No. 8:13-CV-194-T-35AEP, 2014 WL 12576820, at *5 (M.D. Fla. May 19, 2014). Plaintiff does not cite—and the Court is unaware of—any authority requiring an insurance company to immediately tender its full policy limits to the most injured claimant and forgo an investigation, or global settlement conference with the same. In fact, the opposite is true. Florida law instructs that where multiple claims arise out of a single accident, an insurer has the discretion to elect how to settle the claims, bound only by a duty to act reasonably and in good faith. *See Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 561 (Fla. 4th DCA 2003). As such, an insurer "must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony*, 386 So. 2d at 785.

In *Valle*, a case with analogous facts to the instant litigation, the Eleventh Circuit affirmed the district court's grant of summary judgment and rejected Plaintiff's contention that an insurer acted in bad faith when it failed to immediately settle the wrongful death claim resulting from an accident that injured eight other people. *Valle*, 394 F. App'x at 555. There, as here, the insurer sent a letter to all claimants expressing a willingness to settle for the full policy limit and requesting that all claimants participate in a global settlement conference. In granting summary judgment for the insurer, the district court noted that defendant's suggestion that the parties work out a global

settlement, rather than immediately offer its policy limit to the wrongful death claimant, did not amount to bad faith given the number of parties involved and the insurer's uncertainty as to the appropriate distribution of the remainder of the policy. *See Valle v. State Farm Mut. Auto. Ins. Co.*, No. 08-22117-CV, 2010 WL 5475608, at *3 (S.D. Fla. Jan. 15, 2010), *aff'd sub nom. Valle v. State Farm Mut. Auto. Ins. Co*, 394 F. App'x 555 (11th Cir. 2010).

Like *Valle*, this case was complex and involved multiple parties and competing claims. An infant was killed, and four people were injured, including two additional children, one of whom was ejected from the vehicle, sustaining head trauma. Under these circumstances, a reasonable juror could not find that Defendant's decision to exercise its discretion and proceed to a global settlement conference evinces bad faith. On the contrary; such a decision was properly motivated by a desire to determine the proper apportionment of policy limits and avoid "indiscriminately settling selected claims," thereby extinguishing any notion that Liberty Mutual put its interests ahead of its insureds. [3] *See Farinas*, 850 So. 2d 559 (internal citations omitted); *see also Mesa*, 799 F.3d at 1360 (noting that defendant's decision to pursue a global settlement, where there were multiple claimants involved, was consistent with defendant's duty of good faith under Florida law).

The fact that Liberty Mutual could, but chose not to, settle Plaintiff's wrongful death claim before any other claim, does not, standing alone, demonstrate that Defendant acted in bad faith. In the absence of evidence suggesting that Defendant's decision to pursue a global settlement conference was unreasonable, no jury could conclude that in exercising its discretion Liberty Mutual breached its duty to act in good faith. Put simply, Plaintiff's suggestion that Florida's bad

---

[3] The Court is unpersuaded by Plaintiff's attempt to distinguish *Valle* by arguing that Plaintiff's counsel advised Liberty Mutual that it would not discuss the wrongful death claim as part of the global settlement conference, rather than actively participating to settle the wrongful death claim before rejecting the offer. This temporal difference does not bear on whether, as a matter of law, a reasonable fact-finder could determine that Liberty Mutual breached its duty of good faith by pursuing a global settlement conference that included Plaintiff's wrongful death claim.

faith jurisprudence requires an insurer to immediately tender its policy limits to the most injured claimant is wrong. No such duty exists under Florida law and the Court will not impose an inexistent duty on Defendant.

## **CONCLUSION**

As required by *Harvey* and Florida's bad faith jurisprudence, Liberty Mutual diligently investigated the numerous potential claims arising out of this multi-car accident. Liberty Mutual attempted to minimize any possible excess judgment by diligently investigating the claims and offering to tender its full policy limits within thirty-two days of learning of the accident. When Plaintiff rejected Defendant's attempt to arrange a settlement conference, Liberty Mutual tendered its full policy limits. Defendant did this in the absence of a specific demand from Plaintiff and in spite of the fact that Plaintiff's counsel had refused to communicate with Defendant the month prior. Moreover, there is no evidence to suggest that the insureds were not adequately informed throughout the investigative process.[4] On this record, no reasonable jury could conclude that Liberty Mutual acted in bad faith. Accordingly, it is

---

[4] Plaintiff's Opposition to Defendant's Motion for Summary Judgment [ECF No. 45] in several instances suggests, without any record citations, that Liberty Mutual failed to apprise the insured of its investigations. The Court will not parse a summary judgment record to search for facts or evidence not brought to its attention. *See Atlanta Gas Light Co. v. UGI Utilities, Inc.,* 463 F.3d 1201, 1209, n. 11 (11th Cir. 2006). Notwithstanding the same, the Court notes that on February 2, 2010, the day after Liberty Mutual learned of the accident, Defendant sent its insured excess exposure letters, stating that its investigation suggested Mr. Brown had exposure in excess of his policy limit and advising the same to retain counsel. *See* Letter Dated February 2, 2010 [ECF No. 34-4]. In addition, on March 2, 2010, Liberty Mutual sent another set of excess exposure letters to the insured, requesting that Mr. Brown's personal attorney contact Liberty Mutual to take the steps "necessary to fully protect" his interests in light of his excess exposure. *See* Letter Dated March 2, 2010 [ECF No. 34-12]. In sum, Plaintiff points to no evidence to suggest Liberty Mutual failed to keep its insured apprised of its investigation, and the record suggests otherwise.

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [ECF No. 35] is **GRANTED**. Final judgment for Defendant will be entered by separate order. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 23rd day of July, 2019.

_____
**RODOLFO RUIZ**
**UNITED STATES DISTRICT JUDGE**